FILED
2012 Oct-30  PM 01:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **JAMES E. CASTLE, SR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:11-CV-3556-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

### MEMORANDUM OPINION

Plaintiff James E. Castle, Sr. (hereinafter "Mr. Castle") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), who denied his application for Disability Insurance Benefits ("DIB"). Mr. Castle timely pursued and exhausted his administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Castle was a 59-year-old male at the time of his hearing before the administrative law judge (hereinafter "ALJ").  (Tr. 37).  He has a ninth grade education. (Tr. 97). Mr. Castle claims he became disabled on January 1, 2008, due to disorders of the knees and obesity.  (Tr. 25).

His past work experiences include employment as a trucker/laborer. (Tr. 93). Mr. Castle last worked in 2003. (Tr. 12).

Mr. Castle filed an application for a period of disability and DIB on October 5, 2009. (Tr. 72-80). His claims were denied by the Regional Commissioner on December 21, 2009. (Tr. 58-62).

Mr. Castle timely requested a hearing, which was held on April 19, 2011, in Huntsville, Alabama.  (Tr. 10).  The ALJ concluded that Mr. Castle was not disabled and issued his written decision denying his application for benefits on June 2, 2011. (Tr. 20).  The ALJ's decision denying benefits became the final decision of the Commissioner when the Appeals Council denied Mr. Castle's  request for review on August 5, 2011. (Tr. 1-5).

Mr. Castle filed his Complaint on October 4, 2011, which asks this court to review the ALJ's decision.  (Doc. 1). The court has carefully reviewed the record and finds that this case should be remanded for further development pursuant to the

administrative law judge's duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal

analysis has been conducted, the ALJ's decision must be reversed.  *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through September 13, 2012.

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)    whether the claimant can perform her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

At step one, the ALJ found that Mr. Castle did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2008, through his date last insured of March 31, 2009. (Tr. 12) At step two, the ALJ found that Mr. Castle has the following severe combination of impairments:  disorders of the knees and obesity. (*Id.*) At step three, the ALJ found that Mr. Castle's impairments – taken

separately or in tandem – did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ next determined Mr. Castle's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. 20 C.F.R. § 416.945. The ALJ found Mr. Castle capable of less than the full range of medium work[2] as defined in 20 C.F.R. § 416. 1567(c). (Tr. 16). For example, the ALJ found that Mr. Castle could frequently lift 25 pounds, occasionally lift 50 pounds, sit for 6 hours of an 8 hour workday, stand for 6 hours of an 8 hour workday, and walk for 6 hours of an 8 hour workday. (*Id*.). He also found that Mr. Castle could frequently push and pull with his lower extremities, balance, stoop, and crouch, and occasionally climb, kneel, and crawl. (*Id*.).

At step four, the ALJ found that, through the date last insured, Mr. Castle was unable to perform any past relevant work. (Tr. 18). At step five, the ALJ found that, through the date last insured, considering Mr. Castle's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed such as: metal products assembler, hand packager, and inspector. (Tr. 19). Accordingly, the ALJ determined that Mr.

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416. 1567(c).

Castle was not eligible for DIB because he was not disabled under §§ 216(i) and 223(d) of the Social Security Act. (Tr.20).

## ANALYSIS

This Court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[3]

Mr. Castle argues that the ALJ's decision denying his claim for disability

_____

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

7

benefits "is deficient in terms of the assessment of residual functional capacity."
(Doc. 7 at 2).  He contends that the ALJ's decision cannot be based upon substantial
evidence and his decision is due to be reversed and benefits awarded. (*Id.* at 11.) In
the alternative, Mr. Castle argues that his case be remanded "for proper consideration
of the evidence and for proper application of the law." (*Id.*)

I.   **THE ALJ'S RFC FINDING IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

   **A. The ALJ Did Not Err in Affording Little Weight to the RFC Assessment of Dr. Ansari.**

   Mr. Castle argues the physical capacity evaluation completed by Dr. Ansari on
March 28, 2011, should have been given more weight according to Eleventh Circuit
case law.  (Doc. 7 at 5-6).  The Regulations and applicable case law support Mr.
Castle's contention that a treating physician's medical opinion should be given
significant weight, absent a finding of good cause to disregard it.  20 C.F.R. §
404.1527(d); *Lewis v. Callahan,* 125 F.3d 1436 (11th Cir. 1997) ("The ALJ must
clearly articulate the reasons for giving less weight to the opinion of a treating
physician, and the failure to do so is reversible error."); *Boyd v. Heckler*, 704 F.2d
1207, 1211 (11th Cir. 1983) ("We adopt the position of the Second and Seventh
Circuits that a treating physician's opinion is still entitled to significant weight
notwithstanding that he did not treat the claimant until after the relevant

determination date.").

Here, the ALJ does not run afoul of *Lewis* or *Boyd* in affording less weight to Dr. Ansari's medical opinion, both because the evaluation in question was completed two years after Mr. Castle's date last insured ("DLI"), and because the other medical evidence, or lack thereof, supports the ALJ's decision.[4]  Because Mr. Castle's DLI fell on March 31, 2009, the ALJ properly placed less weight on evidence of medical treatment occurring so long after that date.[5]  The ALJ clearly articulated his reasoning for giving less weight to Dr. Ansari's 2011 opinion and more weight to evidence from the time period contemporaneous with the DLI:

> "[T]he record reveals no medical treatment for [Mr. Castle's] knees between 2001 and October 2009, [Mr. Castle] denied significant musculoskeletal symptoms and had normal gait and station in 2008, [Mr. Castle] reported performing significant activities of daily living in his Function Report, ..., and [Mr. Castle] has not alleged any restrictions from his weight."  (Tr. 18).

The former Fifth Circuit has stated that "[t]he Social Security Act is also clear in requiring that disability must be proven to exist *during the time that the claimant*

---

[4] The ALJ points out that Mr. Castle's doctors' visits before his DLI were infrequent. Furthermore, he notes that the lack of medical treatment for Mr. Castle's knees during the disability period suggests Mr. Castle's knee problems may have improved or remained stable. (Tr. 18).

[5] *See* 42 U.S.C. § § 416(i)(2)(C), 416(i)(3).  The guidelines for determining disability clearly state that the claimant must meet the insured requirements in order to be eligible for disability benefits.

*is insured* within the meaning of the special insured status requirements of the Act."
*Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979) (emphasis added).
Because Dr. Ansari's opinion came two years after Mr. Castle's DLI and is
inconsistent with Mr. Castle's lack of medical treatment during his DLI, substantial
evidence supports the ALJ's conclusion in affording little weight to Dr. Ansari's RFC
assessment.

### B. The ALJ's RFC Determination Is Not Supported by Substantial Evidence.[6]

A claimant's RFC is "an assessment, based upon all of the relevant evidence,
of a claimant's remaining ability to do work despite his impairments." *Lewis v.
Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545). While
the ALJ ultimately decides what a claimant can and cannot do, *see* 20 C.F.R. §
404.1546(c), the ALJ is not qualified to interpret raw data in a medical record, *see
Manso-Pizarro v. Sec'y of Health & Human Serv.*, 76 F.3d 15, 17 (1st Cir. 1996);
*Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass 1998). Moreover, the ALJ has

---

[6] The undersigned has rendered several other comparable decisions which
address the inadequacies of the respective ALJ's RFC determinations from which the
framework, analysis, and disposition of this case persuasively flow. *See, e.g., Cohee
v. Astrue*, No. 3:11-CV-2538-VEH, (Doc. 12) (N.D. Ala. Sep. 20, 2012) (reversing
and remanding under similar circumstances in which the court found that the ALJ's
RFC finding was not supported by substantial evidence)

a duty to develop a "full and fair record." *See Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988). Therefore, "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (citing *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984)).

In this case, the ALJ discounted the only physician-assessment of Mr. Castle's ability to work—the opinion of Dr. Ansari. After discounting this assessment, the record contained <u>no</u> medical assessment of Mr. Castle's ability to work despite his physical limitations. The ALJ purported to base his RFC determination on Mr. Castle's lack of medical treatment between 2001 and October 2009, Mr. Castle's denial of significant musculoskeletal symptoms in treatment records from the Ardmore Clinic in 2008, and a Function Report filled out by Mr. Castle in 2009. (Tr. 17) (Exhibit 4E) (Exhibit 2F/1). However, the record contains no evaluation by a medical professional explaining how (or if) these records might translate into work-related limitations, given Mr. Castle's severe obesity and knee disorder. Nor is it clear how these records enabled the ALJ to conclude Mr. Castle could frequently lift 25 pounds, occasionally lift 50 pounds, sit for 6 hours of an 8 hour workday, stand for 6 hours of an 8 hour workday, and walk for 6 hours of an 8 hour workday, or how Mr. Castle could frequently push and pull with his lower extremities, balance, stoop, and

crouch, and occasionally climb, kneel, and crawl.

The Function Report relied on by the ALJ is a questionnaire describing Mr. Castle's daily routine such as his household chores and his social activities. (Tr. 105-12). The ALJ dismissed Mr. Castle's reported inabilities by noting that the questionnaire was completed 6 months after Mr. Castle's DLI, and that his limitations were not consistent with Mr. Castle's lack of medical treatment prior to the DLI. (Tr. 17). However, the ALJ then <u>inconsistently</u> <u>accepted</u> the questionnaire when noting Mr. Castle reported that he was able to do laundry, mow the yard, shop, prepare meals, and attend church. (*Id*.).

Perhaps a trained medical professional could determine Mr. Castle's RFC from this questionnaire, but the ALJ is not a trained professional. Therefore, in determining Mr. Castle's  RFC, the ALJ did exactly what the ALJ cannot do—*i.e.*, play doctor by interpreting raw medical data (or rather, in this case, by interpreting the lack of any medical data). *See Carlisle v. Barnhart*, 392 F. Supp. 2d 727, 731 (11th Cir. 1982). As explained above, the record in this case lacks substantial evidence to support the ALJ's RFC determination. Thus, the ALJ lacked a full and fair record on which to base his decision.

Because the ALJ's RFC determination is not supported by substantial evidence, the court will remand this case with instructions to order a consultative examination

of Mr. Castle. *See Holladay*, 848 F.2d at 1209. Once the record is fully developed, the ALJ can properly determine Mr. Castle's RFC. The court does not hold that the ALJ's RFC determination is incorrect, only that it is not supported by substantial evidence. Nothing in this opinion precludes the ALJ from finding that Mr. Castle possesses the RFC described above, so long as that decision is supported by substantial evidence.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submission of the parties, the decision of the Commissioner is due to be **REVERSED**. This case is **REMANDED** for further proceedings consistent with this opinion.

**DONE** and **ORDERED** this the 30th day of October, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

13